## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: *Finley*, 7:20-cv-170 | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

## ORDER

This matter is before the Court on Plaintiff Theodore Finley's Motion for Summary Judgment on several of Defendants' affirmative defenses under Federal Rule of Civil Procedure 56. ECF No. 41. Having now fully considered the parties' arguments and applicable Texas law, the Court concludes that Plaintiff's motion is due to be **GRANTED**.

Summary judgment is appropriate where there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of demonstrating the absence of a genuine dispute of material fact rests with the moving party. *Celotex*, 477 U.S. at 323. In determining whether the moving party has carried its burden, a court must view the evidence and factual inferences drawn therefrom in the light most favorable to the non-moving party. *Liberty Lobby*, 477 U.S. at 255; *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997).

The Court assumes the parties' familiarity with the general factual allegations and nature of this multidistrict litigation. Finley has brought fifteen claims against Defendants under Texas law[1] arising from injuries he alleges were caused by his use of the Combat Arms Earplug version 2 ("CAEv2") during his military service. *See* Master Short Form Compl., ECF No. 10.[2] Defendants raise several affirmative defenses, including that Finley's failure to warn claims are barred by various intermediary defenses, that the United States military's actions are a superseding cause of Finley's injuries, and that Finley failed to mitigate his damages. Defendants' Answer, ECF No. 11 at ¶ 7, 15, 16.

---

[1] The parties agree Texas law applies to Finley's claims. *See* ECF No. 26 at 1.

[2] Specifically, Finley raises claims for Design Defect – Negligence (Count I), Design Defect – Strict Liability (Count II), Failure to Warn – Negligence (Count III), Failure to Warn – Strict Liability (Count IV), Breach of Express Warranty (Count V), Breach of Implied Warranty (Count VI), Negligent Misrepresentation (Count VII), Fraudulent Misrepresentation (Count VIII), Fraudulent Concealment (Count IX), Fraud and Deceit (Count X), Gross Negligence (Count XI), Negligence Per Se (Count XII), Consumer Fraud and/or Unfair Trade (Count XIII), Unjust Enrichment (Count XV), and Punitive Damages (Count XVI).

### A. Defendants' Intermediary Defenses

Finley argues that Defendants' learned intermediary, bulk supplier, and sophisticated user affirmative defenses do not apply to a manufacturer whose product is marketed and sold directly to the general public. ECF No. 41-2 at 4–9. The Court agrees.

Under Texas law, "the existence of a duty to warn of the dangers of an alleged defective product is a question of law." *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614–15 (Tex. 1996). In general, a manufacturer has a duty to warn of dangers that are known or those that reasonably should be known. *See General Motors Corp. v. Saenz*, 873 S.W.2d 353, 356 (Tex. 1993). However, a manufacturer may "depend on an intermediary to communicate a warning to the ultimate user of a product" under (1) the learned intermediary doctrine, (2) the bulk supplier doctrine, or (3) the sophisticated user doctrine. [3] *Centocor Inc. v. Hamilton*, 372 S.W.3d 140, 154–55 (Tex. 2011) (analyzing the learned intermediary doctrine); *Humble Sand &*

---

[3] Defendants argue that both the learned intermediary and "sophisticated intermediary" doctrines apply, ECF No. 11; however, they have not cited, and the Court has not found, any Texas authority adopting or applying a separate "sophisticated intermediary" doctrine. Texas courts recognize the learned intermediary doctrine, which focuses on a knowledgeable intermediary who intercedes between the manufacturer and ultimate consumer. *See Centocor*, 373 S.W.3d at 154–55 (explaining prior cases and foundation for the learned intermediary doctrine but not discussing a separate sophisticated intermediary doctrine). Texas also recognizes the sophisticated user doctrine, which focuses on a knowledgeable user of the product. *See Humble Sand*, 146 S.W.3d at 194–95. But based on existing authority, there is not a separate "sophisticated intermediary" doctrine in Texas.

*Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 185, 194–95 (Tex. 2004) (analyzing the bulk supplier doctrine and sophisticated user doctrine).

First, Defendants' learned intermediary doctrine defense fails as a matter of law because no court applying Texas law has recognized the doctrine outside of the medical context. *See Butler v. Juno Therapeutics Inc.*, Case No. H-18-898, 2021 WL 2156742, at *10 (S.D. Tex. May 27, 2021) (compiling cases that have applied the learned intermediary doctrine outside of the pharmaceutical context and holding that the doctrine should only apply when products must be sold through a medical intermediary); *Khan v. Velsicol Chemical Corp.*, 711 S.W.3d 310, 313 (Tex. App. Ct. 1986) ("This doctrine has consistently been limited in its application in Texas and elsewhere to the prescription drug, physician-patient relationship."). The Texas Supreme Court has held that the doctrine "applies particularly to the medical field and unavoidably unsafe products like prescription drugs, which, by law, cannot go from manufacturer to the end user except through a prescribing physician." *Centocor*, 372 S.W.3d at 165. Because the CAEv2 is a consumer good that does not by law require a physician intermediary, or any intermediary for that matter, to reach the ultimate user, the learned intermediary doctrine does not apply. *See In re 3M Combat Arms Earplugs Prods. Liab. Litg.*, Case No. 7:20-cv-131-MCR-GRJ, Trial Tr. 04/14/21 at 10:46-10:47 (soldier testifying to purchasing the CAEv2 at a store on a base).

Defendants' bulk supplier doctrine defense also fails as a matter of law because no court applying Texas law has applied the doctrine to a manufacturer who designed, manufactured, marketed, and sold the final product, as Defendants did with the product here. Instead, the bulk supplier doctrine is meant to apply to manufacturers of component parts who do not manufacturer or market the final product that goes to the end user. *See*, *e.g.*, *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 590–92 (Tex. 1986) (applying the bulk supplier doctrine to a bottle cap manufacturer whose caps were added to a soft drink bottle). The rationale behind the doctrine is that component parts manufacturers should not have a duty to warn the end user because they have "no means of identifying or communicating with the ultimate consumer." *Khan v. Velsicol Corp.*, 711 S.W.2d 310, 313 (Tex. App. Ct. 1986) (explaining that the ultimate question for applying the bulk suppler doctrine is whether it is feasible or practical for the manufacturer to warn the end user). Here, Defendants designed, manufactured, and marketed the CAEv2 and had a reasonable means of identifying the end user of the product. As such, the bulk supplier doctrine is not applicable.

The Court likewise concludes that the sophisticated user doctrine does not apply. Under the sophisticated user doctrine, a manufacturer is not required "to warn knowledgeable customers or their employees of risks of use." *Humble Sand*, 146 S.W.3d at 194. However, "the mere presence of an intermediary does not excuse the

manufacturer from warning those whom it should reasonably expect to be endangered by the use of its product." *Alm*, 717 S.W.2d at 591. Thus, for the sophisticated user doctrine to apply, the manufacturer must show that the warnings it provided to the sophisticated user would be reasonably communicated to the end user of the product. For example, in *Gamboa v. Centrifugal Casting Machine Co.*, a manufacturer provided heavy machinery to a customer, and the manufacturer argued that the sophisticated user doctrine applied because the customer had a sophisticated engineering department that could convey the risks to the customer's employees. Case No. H-14-1273, 2015 WL 6835359, at *14 (S.D. Tex. Nov. 6, 2015). In ruling on the manufacturer's motion for summary judgment, the court determined that the manufacturer's sophisticated user doctrine failed because the manufacturer "did not have a reasonable assurance that its warnings would reach those endangered by its product," citing evidence showing that the manufacturer knew the customer rarely provided the end user with the proper warnings. *Id*.

Similarly, in this case, Defendants knew "that the military had a shortage of audiologists and that the CAEv2 was being issued to all deploying soldiers without instructions from Defendants," meaning the military could not be reasonably relied on to convey the risks of use. *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, Case No. 7:20cv122-MCR-GRJ, ECF No. 56 at 7 (N.D. Fla. Sept. 1, 2021) (citing document evidence of "Defendants' knowledge that the military had a shortage of

audiologists and that the CAEv2 was being issued to all deploying soldiers without instructions from Defendants"). Moreover, as stated in this Court's prior rulings on this issue, intermediary defenses such as the sophisticated user doctrine are inapplicable to consumer products that can be purchased over the counter because "the underlying rationale for the intermediary defense is lost where users could purchase and use the product without an intermediary." *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19md2885, 2021 WL 2476651, at *4 (N.D. Fla. June 17, 2021). Consistent with this analysis, the Court finds that Texas courts would not extend the sophisticated user doctrine to this case.

### B. Defendants' Superseding Cause Defense

Finley also moves for summary judgment on Defendants' superseding cause defense as to the fault of the United States, arguing that the Army's conduct in failing to fit Finley with the CAEv2 and train him on its use was foreseeable as a matter of law. ECF No. 41-2 at 9. The Court agrees.

An intervening cause is a separate act between the original act of negligence and the final injury. *Dew v. Crown Derrick Erectors, Inc.*, 208 S.W.3d 448, 450 (Tex. 2006). While there can be more than one proximate cause of an injury, an intervening cause becomes a superseding cause, which cuts off liability for the original tortfeasor, when the "final injury is attributed to the new cause rather than

the first and remote cause." *Stanfield v. Neubaum*, 494 S.W.3d 90, 97 (Tex. 2016) (citing *Dew*, 208 S.W.3d at 450).

Under Texas law, an intervening cause will not cut off liability as a superseding cause where (1) the intervening cause is foreseeable based on the original negligent act and (2) "the risk resulting from the intervening act is the same risk resulting from the original actor's negligence." *Columbia Rio Grande Healthcare v. Hawley*, 284 S.W.3d 851, 858–59 (Tex. 2009). For example, in *Hawley*, a hospital was sued by a patient for failing to notify physicians of the patient's cancer diagnosis. *Id.* at 855. The hospital argued that the physician's negligence in failing to properly follow up with the patient was a superseding cause that cut off the hospital's liability. *Id.* at 856. The trial court denied the hospital's request to instruct the jury on this issue. *Id.* at 857. On appeal, the Texas Supreme Court affirmed the trial court's decision because the physicians' negligence was not a superseding cause for two reasons. *Id.* at 859. First, the risk that the physicians would fail to follow up was foreseeable because the hospital had credible evidence that physicians failed to properly follow up with patients. *Id.* at 858–59. Second, the risk caused by the physician's negligence was the same risk that resulted from the hospital's failure to notify the patient because both actions created the risk that the patient's cancer would go untreated. *Id.* at 859. While the superseding cause defense is usually a question of fact for the jury, *Venetoulias v. O'Brien*, 909 S.W.2d 236,

241 (Tex. App. Ct. 1995), "[a] fact issue that is established with uncontroverted evidence and is not in dispute should not be submitted to the jury." *Robertson Cnty., Tex. v. Wymola*, 17 S.W.3d 334, 342 (Tex. App. Ct. 2000) (citing *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 223 (Tex. 1992)). Such is the case here.

The evidence in this case, even viewed in the light most favorable to Defendants, demonstrates that the Army's alleged failure to fit Finley with the CAEv2 or train him on its use was not a superseding cause for two reasons. First, the Army's alleged failures were foreseeable by Defendants. Like the hospital in *Hawley*, Defendants had tangible evidence that the Army did not have the capacity to fit and train its soldiers, including Finley, with the CAEv2. Specifically, as the Court has noted before, Defendants had "knowledge that the military had a shortage of audiologists and that the CAEv2 was being issued to all deploying soldiers without instructions from Defendants." *See In re 3M Combat Arms Earplug Prods. Liab. Litig.*, Case No. 7:20cv122-MCR-GRJ, ECF No. 56 at 7 (N.D. Fla. Sept. 1, 2021) (citing documents that convey Defendants' knowledge of the military's audiologist shortage and Defendants' knowledge of the widespread use of the CAEv2). With this knowledge, the Army's actions were foreseeable to the Defendants as a matter of law.

Additionally, similar to the physicians' negligence in *Hawley*, the Army's alleged failures created the same type of risk as Defendants' actions. Defendants

allege that the Army's failure to fit and train soldiers, including Finley, created a risk of hearing injury because if the Army had properly fit or trained soldiers, problems with the plug would have been detected or soldiers would have known to fold back the opposing flanges. Finley alleges that the Defendants' defective design and failure to warn created a risk of hearing injury. Since both the Defendants' and Army's alleged actions worked to create Finley's hearing injuries, the Army's actions cannot be a superseding cause under Texas law.

### C. Defendants' Failure to Mitigate Defense

Finley argues "there is no evidence Finley failed to mitigate his damages," and therefore, summary judgment on this defense is proper. ECF No. 41-2 at 13.  In response, Defendants argue that Finley failed to mitigate his damages by not wearing hearing aids and by discontinuing mental health counseling. ECF No. 59 at 5–7.

Under Texas law, for the jury to be instructed on a plaintiff's failure to mitigate "the evidence must (1) clearly show that the plaintiff's decision not to mitigate caused further damages, and (2) sufficiently guide the jury in determining which damages were attributable to the plaintiff's decision not to mitigate." *Formosa Plastics Corp. v. Kajima Intern.*, 216 S.W.3d 436, 459 (Tex. App. Ct. 2006) (citing *Hygeia Diary Co. v. Gonzalez*, 994 S.W.2d 220, 225 (Tex. App. Ct. 1999)).[4]

---

[4] Finley argues that the failure to mitigate defense "fails out of the gate" because "an injured party is not required to minimize damages resulting from fraud." ECF No. 41-2 at 13 (quoting *Formosa*, 216 S.W.3d at 459). The Court need not decide this issue based on its ruling.

CASE NO. 7:20cv170-MCR-GRJ

Defendants first argue that Finley failed to mitigate his damages by not using hearing aids. ECF No. 59 at 6. In support of this argument, Defendants cite Dr. James Crawford's expert report, which states that if Finley "were to pursue hearing aids, he would have no limitations of performance due to his hearing loss." Dr. Crawford's Expert Report, ECF No. 37-14 at 26. The report further states that Finley should function well in "most situations" without hearing aids, which "explains why he has not pursued hearing aids." *Id*. at 15. Dr. Crawford's report itself provides a reasonable explanation for why Finley did not pursue hearing aids, *see id;* however, it does not provide sufficient evidence to "clearly show" that Finley's decision not to use hearing aids "caused further damages." *Formosa*, 216 S.W.3d at 459. Moreover, there is no evidence of how much the use of hearing aids would have mitigated Finley's damages, and thus no evidence to "sufficiently guide the jury in determining which damages were attributable to" Finley's decision not to use hearing aids. *Id*.; *see also In re 3M Combat Arms Earplug Prods. Liab. Litg.*, 2021 WL 2476651 at *4 (determining that defendants were not entitled to a failure to mitigate defense because there was "no evidence that would allow the jury to segregate the damages" attributable to the plaintiff's decision not to use hearing aids).

Second, Defendants argue that Finely failed to mitigate his damages by discontinuing mental health counseling prior to filing suit. ECF No. 59 at 7.  Based

on the records cited by Defendant, Finley sought and underwent mental health counseling in 2015 for post-traumatic stress disorder and general anxiety disorder, but Finley did not receive mental health counseling again until 2020 after he filed his case. ECF No. 59-6; ECF No. 59-7. While this evidence does show a gap in Finley's mental health treatment, Defendants do not cite evidence showing that Finley's mental health issues associated with hearing loss and tinnitus would be improved by regular mental health counseling.[5] Thus, there is insufficient evidence to "clearly show" that Finley's decision not to continue mental health counseling increased his damages associated with hearing loss and tinnitus. *Formosa*, 216 S.W.3d at 459 (explaining that "the evidence must clearly show that the plaintiff's decision not to mitigate caused further damages"). Moreover, the medical records and deposition testimony cited by Defendants fail to "sufficiently guide the jury in determining which damages were attributable" to Finley's decision to discontinue mental health counseling from 2015 to 2020. *Id.*

Accordingly, Finley's motion for summary judgment, ECF No. 41, is **GRANTED** as to the Defendants' intermediary defenses, superseding cause defense, and failure to mitigate defense.

---

[5] Dr. Jacobs's expert report is not relevant to this discussion because the report concludes that Finley's hearing issues do not affect his mental health, meaning Finley does not have any damages to mitigate. Dr. Jacob's Expert Report, ECF No. 41-6 at 7. This is likely why Defendants do not cite their own mental health expert's report in support of this argument. ECF No. 59 at 7.

**DONE AND ORDERED** this 3rd day of November 2021.

*M. Casey Rodgers*
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**